Hodge *v.* The State.

JAMES HODGE *v.* THE STATE.

CRIMINAL LAW. *Cruelty to animals.* A person has the right to protect his premises against the depredations of mischievous dogs, and for that purpose to use such means as are reasonably necessary, and if the depredating animal is thereby caught in a steel-trap and muti- lated, it would not be *needless* torture or mutilation under the statute.

FROM KNOX.

Appeal in error from the Criminal Court of Knox county. M. L. HALL, J.

J. C. J. WILLIAMS for Hodge.

ATTORNEY-GENERAL LEA for the State.

COOKE, Sp. J., delivered the opinion of the court.

The plaintiff in error was indicted and convicted under the act of 1881, ch. 169, enacted for the pre- vention of cruelty to animals.

The first section of said act is as follows: "If any person shall overdrive, overload, torture, torment, deprive of necessary sustenance, or cruelly beat, or needlessly mutilate, or kill, or cause or procure to be overdriven, overloaded, tortured, tormented, or deprived of necessary sustenance, or to be · cruelly beaten, or needlessly mutilated or killed, as aforesaid, any living creature, every such offender shall, for every such offense, be guilty of a misdemeanor." And by the

13th section of said act, the words "torture, torment or cruelty shall be held to include every act, omission or neglect whereby *unjustifiable* physical pain, suffering or death is caused or permitted, * * but nothing in this act shall be construed as prohibiting the shooting of birds for human food."

The indictment charged in substance that the defendant unlawfully and needlessly mutilated a dog, the property of one Garner, by setting a steel-trap in a bucket of slop, and exposing the same, whereby said dog was caught in said trap by the tongue, which was torn out, and great pain and torture unlawfully and needlessly inflicted upon said animal.

The proof showed that the defendant had been for some time annoyed by a dog, or some other animal, invading his premises at night, and breaking up the nests of his hens, sucking the eggs, disturbing his poultry, etc. That he suspected a dog that belonged to his father as being the depredator, but that he had no suspicions against this dog of the prosecutor, who lived about a quarter of a mile distant from him. That these depredations continuing, he borrowed a steel-trap, and set it in a bucket of slop, placed it in his garden, and tied the trap with a cord to a post of the fence. That he did so expecting to catch the dog belonging to his father. That during the night the prosecutor's dog was caught in the trap by the tongue, which, or a part of it, was torn out, and was found lying by the trap. That the dog is mutilated thereby, and unable to eat without great waste of his food, cannot bark as formerly, is very poor,

and very much injured; and that he was a very valuable dog. So says the prosecutor.

The testimony further showed that this valuable dog was in the habit of running about at night, and invading and depredating upon the premises of persons living in the neighborhood. That he had been repeatedly seen at night around the houses and upon the premises of persons living at the distance of a mile or more from the prosecutor, and that he raised disturbances on their premises by fighting the dogs belonging to them.

He was a large dog, and one witness states that he shot at him or towards him one night for the purpose of scaring him away. Another witness states that upon one night when he saw this dog about his premises, a turkey-hen which he had setting had her nest broken up, and the eggs were gone next morning. The testimony fully showed that this dog had a bad character for prowling about through the neighborhood at night.

His Honor, the trial judge, after instructing the jury that "tearing out the tongue of an animal needlessly, that is, without necessity, or unnecessarily causing it to be done, would amount to such torture and needless mutilation of the animal as are prohibited by the statute," further instructed them that "if a party set a trap or other instrument, though it may be to take some particular dog or other animal, and so bait it as to be likely to lure and draw other dogs or animals into danger of the trap, and some other dog or animal should thereby be lured or drawn, and be

injured by the trap or other instrument, these are cir-
cumstances that the jury may look to in connection
with all the evidence in the case to determine whether
the .injury to the animal .was needlessly caused or not.
We do not think this was a sufficiently full or cor-
rect exposition of the law as applicable to the facts
disclosed by this record. The testimony showed that
the premises of the defendant had been nightly in-
vaded for a considerable length of time, his poultry
disturbed, and their nests destroyed by some animal
he supposed to be a dog, and that for the purpose
of capturing it he set the trap in the manner above
stated in his own garden, upon his own premises.
There can be no doubt, we think, that in doing so
his object was, by catching the animal, to protect his
property and relieve' his premises from these depreda-
tions, and not for the purpose of inflicting needless
torture upon the animal. There was no testimony
going to show that the slop used by the defendant
was such as was calculated or likely to lure dogs or
other animals away from the premises where they be-
longed on to his premises or within his enclosures.
That this dog was the animal that had been making
these nightly incursions and depredations upon these
premises can scarcely admit of a doubt. The defend-
ant had a right to protect his premises against such
invasions, and to adopt such means as were necessary
for that purpose. And if a night-prowling dog, in
the habit of invading premises and breaking up hen's
nests, and sucking the eggs, while so transgressing is
caught in a steel-trap, though set by the owner for

Hodge *v.* The State.

that purpose, and thus suffers pain or mutilation, we are not prepared to say that it would be *needless* torture or mutilation within the meaning of the statute. A literal construction of this act would seem to indicate that no one is permitted to kill or wound any living creature, however noxious, even a blackbird or a crow, or a skunk or a serpent, unless under some necessity, without being guilty of a penal offense. We do not understand such to be the meaning of this act. Whilst its object was to prevent cruelty to animals, and was intended as a humane provision for their protection, it was not intended to deprive a man of the right to protect himself, his premises and property, against the intrusions of worthless, mischievous or vicious animals by such means as are reasonably necessary for that purpose. The object of the statute was to protect animals from willful or wanton abuse, neglect, or cruel treatment, and not from the incidental pain or suffering that may be casually or incidentally inflicted by the use of lawful means of protection against them.

The defendant had the right to protect his premises against the depredations of mischievous dogs, and to use such means as were reasonably necessary for that purpose, and if the dog of the prosecutor, the identity of which was unknown to the defendant, was in the habit of committing these depredations, he had a right, if it was necessary to prevent them, to set a steel-trap for the purpose of capturing him, and if, while committing these nightly depredations, not being allowed upon the premises, by a bait, it was thus

caught and mutilated, it would not be *needless* torture or mutilation within the meaning of this statute, and the jury should have been so instructed. Upon the facts of this case, as they appear in the record, even upon a full and correct charge, we would not be satisfied to permit this conviction to stand.

The judgment of the court below will be reversed and a new trial granted.